---

DAVID CZAPIEWSKI,

                Plaintiff,

  v.                                        Case No. 25-cv-1370-pp

TONIA ROZMARYNOSKI, *et al.*,

                Defendants.

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 4), DENYING AS MOOT PLAINTIFF'S MOTION FOR ORDER TO USE RELEASE ACCOUNT (DKT NO. 4) AND PLAINTIFF'S SUBSEQUENT MOTIONS FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE, FOR EXTENSION OF TIME TO PAY INITIAL PARTIAL FILING FEE AND FOR ORDER TO USE RELEASE ACCOUNT (DKT. NOS. 6, 9, 11), DENYING AS MOOT PLAINTIFF'S MOTIONS FOR LEAVE TO FILE SECOND, THIRD AND FOURTH AMENDED COMPLAINTS (DKT. NOS. 10, 14, 16), GRANTING PLAINTIFF'S MOTION FOR LEAVE TO FILE FIFTH AMENDED COMPLAINT (DKT. NO. 17), SCREENING PROPOSED FIFTH AMENDED COMPLAINT AND DENYING AS UNNECESSARY PLAINTIFF'S MOTION FOR SCHEDULING CONFERENCE (DKT. NO. 18)**

---

Plaintiff David Czapiewski, who is incarcerated at Green Bay Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants had violated his constitutional rights. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 4, and screens his proposed fifth amended complaint, dkt. no. 17-1. This order also addresses the plaintiff's redundant motions for leave to proceed without prepaying the filing fee, dkt. nos. 6, 9, his motions to use his release account to pay the initial partial fee, dkt. nos. 4, 6, 11, his

1

motions to file an amended complaint, dkt. nos. 10, 14, 16, 17, and his unnecessary and premature motion for a scheduling conference, dkt. no. 18.

Since September 2025, the plaintiff has filed a complaint, dkt. no. 1, an amended complaint, dkt. no. 3, and motions for leave to file second, third, fourth and fifth amended complaints, dkt. nos. 10, 14, 16, 17. The plaintiff attached to his motion for leave to file a fifth amended complaint, dkt. no. 17, a proposed fifth amended complaint, dkt. no. 17-1  The court will grant the plaintiff's motion for leave to file a fifth amended complaint and will screen the proposed fifth amended complaint. See Fed. R. Civ. P. 15(a)(2); 28 U.S.C. §1915A. The court will deny as moot the plaintiff's motions for leave to file second, third and fourth amended complaints.

## I.      Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 4)

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On September 16, 2025, the court ordered the plaintiff to pay an initial partial filing fee of $19.72. Dkt. No. 7. The court received that fee on October 14, 2025. The court will grant the plaintiff's first motion for leave to proceed without prepaying the filing fee, which it received on September 12, 2025, dkt.

2

no. 4, and will require him to pay remainder of the filing fee over time in the manner explained at the end of this order. The court will deny as moot the two additional motions for leave to proceed without prepaying the filing fee that the court received on September 15, 2025 and September 16, 2025. Dkt. Nos. 6, 9. And because the court already has received the initial partial filing fee, the court will deny as moot the plaintiff's motions for orders allowing him to pay that fee from his release account, dkt. nos. 4, 6, 11, and his motion for an extension of time pay the initial partial filing fee, dkt. no. 11.

## II.      Screening the Proposed Fifth Amended Complaint

### A.      Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to

3

relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court liberally construes complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.     The Plaintiff's Allegations

The plaintiff is suing Tonia Rozmarynoski, Montrel Bridges, James Koehler, Todd Hamilton, Christopher Stevens, Jodene Perttu, Officer Busnelli and Rachel Matushak. Dkt. No. 17-1 at ¶¶7-14. He alleges that he is severely mentally ill and has been diagnosed with schizoaffective disorder and unspecified anxiety disorder. Id. at ¶16. He says that he has a propensity to harm himself by diving off the sink and toilet headfirst, banging his head and

strangling himself, and that the defendants knew about this propensity during the events described in the complaint. Id. at ¶18. The plaintiff describes four separate incidents, and says that defendant Rozmarynoski is the "joindering defendant[.]" Id. at ¶7.

First, the plaintiff alleges that on November 3, 2023 at about 3:45 p.m. to 4:15 p.m., he was in a restraint chair for self-harm based on Rozmarynoski's recommendation. Id. at ¶¶19-20. The plaintiff states that when Rozmarynoski told him he would be taken out of the restraint chair, he told her that he still felt like harming himself and that he planned to dive off the toilet headfirst if she made him go in his cell. Id. at ¶¶21-22. Rozmarynoski allegedly said that she would have a cell extraction team put the plaintiff in his cell. Id. at ¶23. The plaintiff states that after the cell extraction team forced him into the cell, he dove off the sink, was unconscious for a while and injured his back, shoulder and neck. Id. at ¶24. The plaintiff claims that Rozmarynoski, Bridges and Hamilton violated his constitutional rights by forcing him into his cell after he said he wanted to remain in the restraint chair because he still wanted to self-harm. Id. at ¶41. The plaintiff also claims that the actions of these three defendants amounted to retaliation for his statement that he wanted to remain in the chair. Id.

Second, the plaintiff alleges that since October 14, 2024, incarcerated individuals like the him—in this instance, individuals who are in the RSHU (Restricted Status Housing Unit) on AC (administrative confinement) status at Green Bay—cannot have electronic tablets for use in their cells. Id. at ¶25.

5

Incarcerated individuals on non-punitive status in all other Wisconsin prisons allegedly can use electronic tablets in their cells. Id. The plaintiff states that he overheard Rozmarynoski say that "they" will not allow tablets because incarcerated individuals will never want to leave the RHU. Id. at ¶27. The plaintiff allegedly wrote to Koehler, Stevens and Perttu but they lied and said they could not do anything about the situation because of infrastructure. Id. at ¶28. The plaintiff claims that Rozmarynoski, Koehler, Stevens and Perttu adopted a policy of inaction to not allow incarcerated individuals at Green Bay on administrative confinement, a non-punitive status, to have electronic tablets like every other similarly-situated incarcerated person in Wisconsin in a high security restricted housing unit. Id. at ¶42.

Third, the plaintiff alleges that on November 5, 2024, after resisting restraints and getting injured, his arm was swollen, and he thought it was broken. Id. at ¶31. Rozmarynoski allegedly placed cuffs on the plaintiff's wrist on the tightest notch and had to squeeze the swelling to fasten the cuff. Id. The plaintiff states that after he expressed disapproval, Rozmarynoski left it like that which caused the plaintiff excruciating pain for four hours. Id. The plaintiff alleges that in violation of policy, Nurse Matushak did not check the restraints for safety, thereby denying him medical care. Id. at ¶32. The plaintiff's arm allegedly went numb from loss of blood circulation, and he has nightmares about the pain. Id. at ¶¶32-33. The plaintiff claims that Rozmarynoski used excessive force by applying the cuffs too tightly and that

Matushak denied him medical care because she didn't check the restraints, in violation of his constitutional rights. Id. at ¶43.

Fourth, the plaintiff alleges that on June 23 or 24, 2025, he was placed on observation status for covering his window with linen and saying he was going to harm himself, and he was subsequently put on linen restriction for his safety. 34. Id. at ¶34. A day or two later, the plaintiff allegedly was let off observation status when Rozmarynoski directed CO Busnelli to give the plaintiff linen so he could harm himself. Id. at ¶35. The plaintiff states that he harmed himself by choking himself with his pants, after which he was placed back in the restraint chair. Id. While he was in the restraint chair, Rozmarynoski allegedly ordered officers to rip off the plaintiff's clothes rather than cutting them off. Id. at ¶36. The plaintiff alleges that as a result, the back of his knee was cut. Id. at ¶37. He allegedly saw the health services unit (HSU) for his knee, and because his underwear was wrapped around his scrotum, causing intense pain. Id. While in the restraint chair, the plaintiff allegedly had to keep moving because he doesn't fit in the chair and because the back of his knee hurt, and his covering came off. Id. at ¶38. The plaintiff states that Rozmarynoski forced him to sit naked for two hours while numerous people walked by. Id. at ¶39. The plaintiff states that he was sexually harassed. Id. at ¶40. The plaintiff claims that Rozmarynoski and Busnelli violated his constitutional rights because they ignored his linen restriction so that he could harm himself. Id. at ¶44. He also claims that Rozmarynoski used excessive

force to rip his clothes off and unlawfully left him naked for hours in a restraint chair. Id.

For relief, the plaintiff seeks monetary damages, injunctive relief and declaratory relief. Id. at pp. 8-9.

    C.    Analysis

Although it is acceptable for a plaintiff to file several claims against the same defendant, a plaintiff cannot bring unrelated claims against different defendants in the same case. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007); Fed. R. Civ. P. 18(a) and 20(a)(2). A plaintiff may join multiple defendants in a single case only if the plaintiff asserts at least one claim against each defendant that arises out of the same events or incidents and involves questions of law or fact that are common to all the defendants. Fed. R. Civ. P. 20(a)(2); George, 507 F.3d at 607; Wheeler v. Wexford Health Sources, Inc., 689 F.3d 680, 683 (7th Cir. 2012) (joinder of multiple defendants in one case "is limited to claims arising from the same transaction or series of related transactions").

For example, if a plaintiff has one claim against Defendants A, B, C and D and an unrelated claim against Defendants A, B, and E, and he wants to proceed with both claims in the same case, Rules 18 and 20 require him to dismiss defendants C, D and E. That way, he can proceed against the two defendants (A and B) who are common to both claims. If the plaintiff wants to pursue claims against defendants C, D and E, he must file separate lawsuits against them. To be clear: Under Rule 18, the plaintiff can join as many *claims*

as he wants against an opposing party, but he still must comply with Rule 20, which allows a plaintiff to join *defendants* in one case only if (a) he asserts a joint right to relief against them, or the right he asserts related to or arose out of the same transaction or occurrence or there is a common question of fact or law as to all defendants.

The plaintiff's proposed fifth amended complaint violates Rules 18 and 20 because it attempts to bring unrelated claims against multiple defendants. The four incidents the plaintiff described in the proposed fifth amended complaint do not involve the same defendants and do not arise from the same transaction or series of transactions. If the plaintiff wants to pursue all these claims, he must file separate lawsuits for each of the four incidents, naming only the defendants involved in each incident in the relevant case, and must pay a filing fee for each lawsuit.

When a plaintiff improperly has joined unrelated claims against unrelated defendants, the court must reject the complaint "either by severing the action into separate lawsuits or by dismissing the improperly joined defendants." Owens v. Hinsley, 635 F.3d 950, 952 (7th Cir. 2011) (citing Fed. R. Civ. P. 21). Alternatively, the court may strike the complaint and grant the plaintiff permission to file another one. See Dorsey v. Varga, 55 F.4th 1094, 1107 (7th Cir. 2022) (citing Perez v. Fenoglio, 792 F.3d 768, 783 (7th Cir. 2015)). As explained below, the court will allow the plaintiff to proceed on an Eighth Amendment claim based on allegations relating to the first incident,

against the defendants involved in the first incident, and will dismiss those defendants whom the plaintiff did not name in relation to the first incident.

In his allegations regarding the first incident, the plaintiff alleges that Rozmarynoski, Bridges and Hamilton had him removed from the restraint chair and placed in his cell despite his telling them that he would harm himself if that happened. After the plaintiff returned to his cell, he allegedly dove off his sink to the floor, like he said he would. Failure to provide protection from suicide or self-harm constitutes an Eighth Amendment violation if deliberate indifference by prison officials to an incarcerated individual's welfare effectively condones the harm by allowing it to happen. Eagen v. Dempsey, 987 F.3d 667, 693-94 (7th Cir. 2021) (citations omitted). To state a claim under the Eighth Amendment, the plaintiff must allege: (1) "he presented an objectively serious medical need;" and (2) "a defendant [ ] responded [ ] with deliberate indifference, thereby resulting in some injury." Lord v. Beahm, 952 F.3d 902, 904 (7th Cir. 2020) (citing Petties v. Carter, 836 F.3d 722, 727-28 (7th Cir. 2016)). A medical condition is objectively serious if it is "so obvious that even a lay person would perceive the need for a doctor's attention." See Roe v. Elyea, 631 F.3d 843, 857 (7th Cir. 2011). A genuine risk of suicide or self-harm constitutes an objectively serious medical condition. Whitaker v. Dempsey, 144 F.4th 908, 916 (7th Cir. 2025) (citing Lisle v. Welborn, 933 F.3d 705, 716 (7th Cir. 2019) (suicide); Miranda v. County of Lake, 900 F.3d 335, 349 (7th Cir. 2018) (self-harm)). Regarding the second prong, a defendant responds with deliberate indifference when he or she "actually knew of and disregarded a

10

substantial risk of harm." <u>Petties</u>, 836 F.3d at 728. "This requires 'more than mere or gross negligence, but less than purposeful infliction of harm.'" <u>Lisle</u>, 933 F.3d at 716-17 (quoting <u>Matos v. O'Sullivan</u>, 335 F.3d 553, 557 (7th Cir. 2003)). The plaintiff may proceed on an Eighth Amendment claim against Rozmarynoski, Bridges and Hamilton in their individual capacities for allegedly having the plaintiff returned to his cell after the plaintiff said he would harm himself.

The plaintiff also alleges that these defendants' conduct amounted to retaliation for his complaining about being removed from the chair. To plead a retaliation claim, the plaintiff must allege that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the defendants' decision to take the retaliatory action." <u>Perez v. Fenoglio</u>, 792 F.3d 768, 783 (7th Cir. 2015) (quoting <u>Bridges v. Gilbert</u>, 557 F.3d 541, 546 (7th Cir. 2009)). The plaintiff states that his First Amendment protected activity was telling Rozmarynoski, Bridges and Hamilton that he would jump off his sink if he was removed from the restraint chair and returned to his cell, and that they retaliated against him by removing him from the chair and returning him to the cell. The plaintiff has not plausibly alleged that his request that the defendants not remove him from the restraint chair and return him to his cell was a motivating factor behind the defendants' conduct to remove him from the chair and place him in his cell. <u>See</u> <u>Dorsey v. Williams</u>, Case No. 21-1858, 2022 WL

11

337192, at \*1 (7th Cir. Feb. 4, 2022) (citing <u>Bridges v. Gilbert</u>, 557 F.3d 541, 546 (7th Cir. 2009)). He has not explained why he believes his alleged protected activity was the cause of the defendants' alleged conduct. <u>See</u> <u>id.</u> (citing <u>Kaminski v. Elite Staffing, Inc.</u>, 23 F.4th 774, 777-78 (7th Cir. 2022)). The plaintiff has not stated a retaliation claim.

In summary, the plaintiff may proceed on an Eighth Amendment claim against Rozmarynoski, Bridges and Hamilton in their individual capacities based on his first incident allegations. The plaintiff may not proceed on any claims based on the second, third and fourth incidents he describes in the fifth amended complaint. The court will dismiss defendants Koehler, Stevens, Perttu, Matushak and Busnelli because none of them are alleged to have been involved in the first incident.

## III. Motion for Scheduling Conference (Dkt. No. 18)

On April 21, 2026, the court received from the plaintiff a motion for a scheduling conference. Dkt. No. 18. The plaintiff states that he wants the court to set a scheduling conference because he has three other cases in progress; he wants the parties to be able to "confer on a mutual settlement agreement" and he wants to learn whether the defendants "concur with a preliminary injunction and/or TRO against defendants." <u>Id.</u>

The plaintiff's motion is unnecessary. The court does not hold scheduling conferences in §1983 cases filed by incarcerated plaintiffs. At this point, the second amended complaint has not been served on the defendants, so they have not had the opportunity to answer. Once the court receives their answers,

12

the court will issue a scheduling order. The court advises the plaintiff to wait until a lawyer has filed a notice of appearance on behalf of the defendants. The plaintiff may, if he wants to, contact that lawyer and discuss the issues he mentioned in his motion. At that point, if the plaintiff wants the court to calendar a status conference, he may file a motion asking the court to do so. The court will deny unnecessary the plaintiff's motion for a scheduling conference.

## IV.     Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 4.

The court **DENIES AS MOOT** the plaintiff's motion to use his release account to pay initial partial filing fee. Dkt. No. 4.

The court **DENIES AS MOOT** the plaintiff's motion for leave to proceed without prepaying the filing fee and to use his release account. Dkt. Nos. 6.

The court **DENIES AS MOOT** the plaintiff's motion for leave to proceed without prepaying filing fee. Dkt. No. 9.

The court **DENIES AS MOOT** the plaintiff's motion for order to use release account to pay partial filing fee and for extension of time. Dkt. No. 11.

The court **DENIES AS MOOT** the plaintiff's motions for leave to file second, third and fourth amended complaints. Dkt. Nos. 10, 14, 16.

The court **GRANTS** the plaintiff's motion for leave to file fifth amended complaint. Dkt. No. 17. The court **DIRECTS** the clerk's office to separately

13

docket the proposed fifth amended complaint at Dkt. No. 17-1, as the operative complaint.

The court **DISMISSES** defendants Koehler, Stevens, Perttu, Matushak and Busnelli.

The court **DENIES** as unnecessary the plaintiff's motion for scheduling conference. Dkt. No. 18.

Under an informal service agreement between the Wisconsin Department of Justice and this court, the court will electronically transmit a copy of the fifth amended complaint and this order to the Wisconsin Department of Justice for service on defendants Rozmarynoski, Bridges and Hamilton. Under the informal service agreement, the court **ORDERS** those defendants to file a responsive pleading to the fifth amended complaint within sixty (60) days.

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$330.28** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Warden of Green Bay Correctional Institution, where the plaintiff is confined.

The court **ORDERS** that the parties must not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the Clerk of Court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody

---

[1] The Prisoner E-Filing Program is mandatory for all individuals incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

15

or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

Dated in Milwaukee, Wisconsin, this 20th day of May, 2026.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**

16